AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.    MJ20-337
Black Axia Cell Phone, more fully described in )
Attachment. A. )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Black Axia Cell Phone, more fully described in Attachment. A.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and 846 | Distribution of and Possession with Intent to Distribute Controlled Substances; Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

✓  See Affidavit of Special Agent Joseph Cheng, continued on the attached sheet.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____   is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Joseph Cheng, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____06/11/2020_____

_____
*Judge's signature*

City and state:  Bellingham, Washington

Paula L. McCandlis, United States Magistrate Judge
*Printed name and title*

USAO: 2018R00949

### AFFIDAVIT OF JOSEPH CHENG

STATE OF WASHINGTON )

)     ss

COUNTY OF WHATCOM )

I, Joseph Cheng, being first duly sworn on oath, depose and say:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.  I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2.  I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), United States Department of Justice.  I have been so employed since August 2006.  In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848.  I am currently assigned to the Bellingham Resident Office of the DEA's Seattle Field Division.  My current assignment involves investigations of high-level drug trafficking organizations within the Western Washington area and elsewhere.

3.  I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking.  I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants.  As a result, I have become familiar with methods of operation of drug traffickers and organizations.  As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of the distribution of controlled substances including fentanyl and its analogues, cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, heroin, marijuana, and other dangerous drugs.

4.      I have interviewed numerous drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users.  I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds.  I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, internet, pagers, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and mislead law enforcement investigations.  I have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ.  I have examined narcotics customers' supplier lists, pay/owe ledgers maintained by traffickers, and other documentation related to narcotics trafficking.  I have also examined documentation of various methods by which methamphetamine, cocaine, marijuana, heroin, and other illicit drugs are smuggled, transported, and distributed.  I have participated in hundreds of hours of surveillance of narcotics traffickers.  During surveillance, I have personally observed narcotics transactions, counter surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings.

5.      I have also participated in investigations that involved the interception of wire communications, including four investigations of large-scale drug trafficking organizations in which I was the case agent and each of which resulted in the conviction of approximately 20 individuals on federal drug-related charges.  In addition to these cases, I have participated in numerous other wiretap investigations in a variety of roles, including by conducting physical surveillance and monitoring intercepted communications.  I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance or by targets' statements.  Throughout my law enforcement career, I have

1    spoken with, worked with, and gained knowledge from numerous experienced federal,

2    state, and local narcotics officers.

3         6.       I have a bachelor's of science in computer science, which I received from

4    San Jose State University in 2002.  During the course of obtaining this degree I

5    completed courses in network management.  Additionally, I have complete college level

6    course work on computer forensics.  During those courses I have learned about network

7    layered architectures and the principles of network communications using various

8    network protocols.

9         7.       I have been assigned as a DEA technical agent since 2010, when I

10   completed the DEA Basic Technical Course.  As part my duties I have been involved in

11   the searches of numerous cell phones and computers.

12        8.       The facts in this affidavit come from my training, experience, and

13   information obtained from other agents and witnesses.

14               **II.       PURPOSE OF THIS AFFIDAVIT**

15        9.       I make this affidavit in support of an application for a warrant authorizing

16   the search of the following target device, which is further described below and in

17   Attachment A (attached hereto and incorporated by reference as if fully set forth herein),

18   for evidence, fruits and instrumentalities, as further described in Attachment B (attached

19   hereto and incorporated by reference as if fully set forth herein), of the crimes of

20   *Distribution of, and Possession with Intent to Distribute, Controlled Substances*, in

21   violation of 21 U.S.C. § 841(a)(1); *Conspiracy to Distribute, and to Possess with the*

22   *Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1) and

23   846, as described herein:

24               a)   The **Target Device** is a Black Axia Cell Phone, which was seized from
                      the person of Timothy MANTIE on October 22, 2019.  The **Target**
25                    **Device** was assigned DEA exhibit number N-1035 and is securely
                      stored as evidence at the DEA Bellingham Residence Office, 1855
26                    Barkley Boulevard, Bellingham, Washington 98226.

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 3
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      10.     Based upon my training and experience and discussions with other

2   investigators, I know that the **Target Device** has been stored in a manner in which its

3   contents are, to the extent material to this investigation, in substantially the same state as

4   they were when this **Target Device** first came into the possession of the DEA.

5               **III.     SOURCES OF INFORMATION**

6      11.     I make this Affidavit based upon personal knowledge derived from my

7   participation in this investigation and upon information I believe to be reliable from the

8   following sources and others:

9          a.  My training and experience investigating drug trafficking and related
              criminal activity, as described above;
10

11         b.  Oral and written reports and documents about this and other investigations
              that I have received from agents of the DEA and the Whatcom County
12            Sherriff's Office (WCSO), and other federal, state and local law enforcement
              agencies;
13

14         c.  Physical surveillance conducted by the aforementioned agencies, and other
              law enforcement agencies, that has been reported to me directly or indirectly;

15         d.  Telephone toll records and subscriber information;

16         e.  Washington State Department of Licensing records;

17         f.  Commercial Databases;

18         g.  Public records;

19         h.  Publicly viewable information on social media websites (*i.e.*, Facebook);

20         i.  Document, photographs and other records obtained via search warrant and
              subpoena; and
21

22         j.  Data obtained via court authorized search warrants.

23

24     12.     I have not included every fact known to me concerning this investigation.  I

25   have set forth only the facts that I believe are necessary for a fair determination of

26   probable cause for the requested search warrant.

27     13.     In the following paragraphs, I describe communications between various

28   individuals. Except where specifically indicated with quotation marks, the descriptions are

AFFIDAVIT OF SPECIAL AGENT CHENG - 4
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  summaries of the conversations and are not meant to reflect the specific words or language
2  used.

3                         **III.    SUMMARY OF INVESTIGATION**

4  **A.    Status of the Case**

5          5.      This case is pending trial. This case arises from a DEA investigation that
6  began in the spring of 2018. On September 13, 2018, a federal grand jury in the Western
7  District of Washington returned a five-count indictment (Case No. CR18-217RSM)
8  charging Bradley WOOLARD and Griffin THOMPSON with Conspiracy to Distribute
9  Controlled Substances (Furanyl-fentanyl), Possession of Furanyl fentanyl with Intent to
10 Distribute, and, as to WOOLARD, being a felony in possession of firearms and
11 possessing firearms in furtherance of a drug trafficking offense. On June 12, 2019, the
12 grand jury returned a Superseding Indictment charging Bradley WOOLARD, Anthony
13 PELAYO, Shawna BRUNS, Robert TABARES, Keith STRAND and Adrian
14 BERGSTROM in *United States v. Woolard, et al.*, with *Conspiracy to Distribute*
15 *Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846
16 (Count 1), *Money Laundering Conspiracy*, in violation of 18 U.S.C. §§ 1956(a)(2)(A)
17 and 1956(h), and substantive drug trafficking and money laundering offenses.
18 WOOLARD and PELAYO were also charged with firearms offenses.  On October 22,
19 2019, the grand jury returned a Second Superseding Indictment, containing 43 total
20 counts against nine defendants:  WOOLARD, PELAYO, TABARES, STRAND,
21 BERGSTROM, Timothy MANTIE, Jerome ISHAM, Jose Feliciano LUGO, and Andrew
22 TONG.  All defendants but TONG were charged with *Conspiracy to Distribute*
23 *Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846
24 (Count 1).  The other counts charged various other drug trafficking, money laundering,
25 and firearms offenses.  On January 14, 2020, the grand jury returned a Third Superseding
26 Indictment in *United States v. Woolard, et al.*, containing 46 total counts against seven
27 defendants: WOOLARD, PELAYO, TABARES, MANTIE, ISHAM, TONG, and

28
   AFFIDAVIT OF SPECIAL AGENT CHENG - 5                          UNITED STATES ATTORNEY
   USAO #2018R00949                                              700 STEWART STREET, SUITE 5220
                                                                 SEATTLE, WASHINGTON 98101
                                                                 (206) 553-7970

1 | LUGO.  All defendants but TONG are charged with *Conspiracy to Distribute Controlled*
2 | *Substances*, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Count 1). The
3 | Third Superseding Indictment includes various drug trafficking, firearms, and money
4 | laundering charges.  Defendant MANTIE is presently charged only in Count 1.
5 | WOOLARD, PELAYO, ISHAM, and LUGO are in custody and pending trial.
6 | TABARES, MANTIE, and TONG are out of custody and pending trial.

7 |       6.     THOMPSON, STRAND, BERGSTROM, and BRUNS have pleaded
8 | guilty. BERGSTROM was sentenced on March 6, 2020 to 14 months in prison for his
9 | role in the drug conspiracy. The other three are awaiting sentencing. Trial for the
10 | remaining defendants is scheduled for September 8, 2020 in U.S. District Court in
11 | Seattle, before Chief Judge Ricardo Martinez.

12 |       7.     As discussed herein, this investigation has given probable cause to believe
13 | that WOOLARD (and, possibly others) ordered the fentanyl over the internet from China.
14 | Once WOOLARD and/or his coconspirators received the powdered fentanyl through the
15 | mail, WOOLARD caused the fentanyl to be pressed into fentanyl-laced counterfeit
16 | oxycodone pills, by Anthony PELAYO.  Once pressed into pills, WOOLARD, PELAYO,
17 | MANTIE, ISHAM and others distributed these pills into the community.

18 | **B.**    **Summary of Probable Cause**

19 |       8.     This investigation has also given probable cause to believe that the
20 | conspirators, including MANTIE, used electronic/digital devices to further their crimes,
21 | and to store evidence of their crimes. In July and August 2018, investigators executed
22 | multiple federal search warrants at WOOLARD's residence, located at 9717 99th Avenue
23 | Northeast, Arlington, Washington (hereinafter the "WOOLARD Residence"). Pursuant to
24 | those search warrants, investigators seized approximately 10,000 light blue pills marked
25 | "M30" which tested positive for furanyl fentanyl, a fentanyl analogue. Investigators also
26 | seized numerous items during the searches of the WOOLARD Residence and
27 | outbuildings, including 33 firearms (the majority of which were concealed in a hidden

28 |

1  room in a shop on the property), thousands of rounds of ammunition, approximately $1.1

2  million in suspected drug proceeds concealed in various locations throughout the

3  WOOLARD residence and in the shop areas on the property, and cell phones, including

4  an Apple iPhone. Investigators seized multiple documents from the WOOLARD

5  Residence referencing telephone number (360) 395-5222 and email:

6  bradwoolard79@gmail.com, as being used by WOOLARD.

7       9.     Investigators searched the iPhone and iPad seized from the WOOLARD

8  Residence pursuant to search warrants.  Investigators learned this iPhone was assigned

9  (360) 395-5222 and Apple ID bradwoolard@ymail.com.  Two email accounts were

10  synced with this iPhone, bradwoolard@ymail.com and bradwoolard79@gmail.com.

11  Review of emails on this phone revealed email exchanges between WOOLARD, using

12  bradwoolard79@gmail.com, and individuals who appeared to be based in China.  In these

13  emails, WOOLARD and the China-based individuals openly discussed WOOLARD

14  attempting to obtain various chemical substances, including fentanyl and furanyl

15  fentanyl, from China.

16       10.     Investigators discovered that the iPad had a listed owner of "Brad's iPad"

17  and an Apple ID of bradwoolard@ymail.com.  In this iPad investigators located

18  numerous messages between WOOLARD and PELAYO in which WOOLARD was

19  providing PELAYO with a recipe on how to mix "active," which investigators believe to

20  be fentanyl or a fentanyl analogue, to press into pills.  Additionally, investigators

21  identified a photograph sent to WOOLARD by PELAYO which appeared to depict a pill

22  press.  In addition, investigators located messages between WOOLARD and PELAYO

23  referring to pills being pressed for "Tim," as well as messages between WOOLARD and

24  BRUNS stating how much money "Tim" was bringing in weekly.  Investigators also

25  located identified multiple phone numbers, often saved under various spellings of the

26  name "Tim," in WOOLARD's contact list.  Investigators also identified communications

27  between WOOLARD and these stored phone numbers that appear drug-related.

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 7
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       11.    During search of MANTIE's residence in October 2019, investigators

2  seized and searched numerous cell phones pursuant to a federal search warrant. As

3  discussed in greater detail below, some of the phones recovered from MANTIE's

4  residence were in contact with WOOLARD's phone and/or stored in WOOLARD's

5  contact list. Additionally, investigators believe that MANTIE engaged in drug trafficking

6  with as-yet unidentified individuals. In light of the investigation to date, there is probable

7  cause to believe that evidence, fruits, and instrumentalities of MANTIE's drug trafficking

8  will be found in the **Target Device**.

9                        **IV.   PROBABLE CAUSE**

10       12.    As discussed herein, DEA is investigating fentanyl trafficking and related

11  offenses in the Western District of Washington and elsewhere, by WOOLARD,

12  PELAYO, MANTIE, and others. The investigation is ongoing. Based on my training

13  and experience, and information relayed to me by other law enforcement personnel, I

14  know that fentanyl is a Schedule II narcotic and a highly a dangerous drug. Fentanyl is a

15  synthetic opioid that is 50 times more toxic than heroin. In its purest form fentanyl is a

16  white powder or in grains similar in size to table salt. For most people, two to three

17  milligrams of fentanyl is capable of inducing respiratory depression, arrest and possibly

18  death. Two to three milligrams of fentanyl is comparable in size to five to seven

19  individual grains of table salt. Additionally, counterfeit Percocet pills have been

20  associated with multiple overdose deaths in Skagit and Snohomish Counties in 2018 and

21  fentanyl has been linked to multiple overdoses in Snohomish County, Washington.

22       13.    On July 27, 2018, investigators observed a vehicle driven by Griffin

23  THOMPSON depart his residence in Bellingham, Washington, drop his passenger off at a

24  Safeway, located in Arlington, Washington and drive to 9717 99th Avenue Northeast,

25  Arlington, Washington (the WOOLARD Residence). Investigators then observed

26  THOMPSON return to the Safeway, pick up his passenger and drive south. Investigators

27  then had THOMPSON's vehicle stopped by uniformed officers. The driver of the vehicle

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 8
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   was positively identified as Griffin THOMPSON, via his Washington driver's license and

2   the passenger was identified as Mikala MURPHY, via her U.S. passport  A narcotics

3   detecting K-9 was deployed to sniff the exterior of the vehicle and gave a positive alert to

4   the odor of narcotics emanating from the vehicle.  The vehicle was subsequently searched

5   pursuant to the vehicle exception.  During that search, investigators located and seized

6   from underneath the front passenger seat (in an area that could only be accessed from the

7   rear seats) a white box which contained 3 ziploc baggies of light blue colored pills

8   marked "M30."  An open-source internet search indicated that pills marked "M30" are 30

9   milligram Oxycodone.  Oxycodone is a Schedule II narcotic.  These pills were sent to the

10  DEA laboratory for testing and the laboratory counted 3,137 pills and indicated that they

11  tested positive for furanyl fentanyl, which is a fentanyl analogue.

12  **A.      Execution of Multiple Search Warrants of the WOOLARD Residence in July and August 2018**

13          14.      On July 28, 2018, the Honorable Mary Alice Theiler signed a search

14  warrant authorizing the search of 9717 99th Avenue Northeast, Arlington, Washington

15  (the WOOLARD Residence), *i.e.*, the residence of WOOLARD, Shawna Marie Bruns

16  (WOOLARD's wife), and their minor children.   During the execution of the search

17  warrant that day, investigators found approximately 10,000 of the counterfeit Percocet

18  pills located in the office of the main residence.  In this office, there were numerous

19  documents with the name Bradley WOOLARD.  Additionally seized from the office was

20  a small container of blue dye, which investigators suspect could have been used by

21  WOOLARD in the process of pressing white fentanyl powder and binding materials into

22  counterfeit M30 pills.  The pills located in the office were consistent with the appearance

23  of the pills seized from THOMPSON on July 27, 2018.  These pills were submitted to the

24  DEA laboratory for testing and the laboratory counted 12,389 pills and indicated that they

25  tested positive for furanyl fentanyl.

26

27

28

Affidavit of Special Agent Cheng - 9
USAO #2018R00949

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

15.     Investigators also found approximately $400,000 in cash located in two safes, one in the office and one in the master bedroom closet.  Items of dominion and control with WOOLARD's name were found in the office and master bedroom.

16.     During the July 28 search of the WOOLARD Residence, investigators seized two shipping labels from the trash in the office.  One shipping label had the sender and recipient removed but described the contents as "Lab supplies" with a weight of 0.1 kilograms, a value of $5.00 and goods' origin of "CN".  A second shipping label was largely intact and also listed the contents as "Lab supplies" with the same weight, value and goods' origin.  This shipping label showed "Danette Skelton" and "32326 Mountain Loop Hyway, Granite Falls WA USA 98252" as the "ship to" information and the "from" information listed "Wuzong Hui" and "China 61 Jianning Road No. 3 Building 1502 Room GulouQu, Nanjing Jiangsu 210000."  Additionally the shipping labels listed tracking number LS508043116CN.  According to the USPS website, this package was delivered to the Granite Falls address on January 29, 2018.

17.     On August 16, 2018, the computer and other digital devices present in the WOOLARD Residence, including an Apple iPhone and iPad were seized pursuant to a federal search warrant that had been issued by U.S. Magistrate Judge Paula L. McCandlis on August 15, 2018.  Searches of WOOLARD's iPhone and iPad are discussed below.

**B.     Two Packages of Fentanyl Shipped from China Intercepted by Law Enforcement**

18.     As discussed above, the shipping labels found in the WOOLARD Residence listed the "from" information as "Wuzong Hui" and "China 61 Jianning Road No. 3 Building 1502 Room GulouQu, Nanjing Jiangsu 210000."   Investigators identified two additional parcels that were en route to Western Washington from the same shipper as listed on packaging materials found in the WOOLARD Residence.  Both parcels were intercepted.  On August 2, 2018, investigators obtained federal search warrants for the two additional parcels, one of which was addressed to Sadie BATES at 12118 Hwy 99 #J 402, Everett, Washington, tracking number LY460463148CN, and one of which was

1  addressed to Adrian BERGSTROM at 200 East Maple St Apt 507, Bellingham USA US
2  98225, tracking number LY466322829CN.

3      19.     The parcels were searched pursuant to the warrant.  The contents of both
4  parcels was submitted to the DEA laboratory for testing.  According to the DEA
5  laboratory, the contents of both parcels tested positive for Furanyl Fentanyl and the
6  contents weighed approximately 99.4 grams and 99.6 grams.

7  **C.    Interview of a Cooperating Defendant in September 2019**

8      20.     In September 2019, investigators interviewed a cooperating defendant (CD)
9  who provided information about the drug trafficking activities of WOOLARD, MANTIE,
10  PELAYO and others.  At that time, the CD had been indicted by a federal grand jury for
11  *Conspiracy to Distribute Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1),
12  841(b)(1)(A) and 846, *Conspiracy to Commit Money Laundering*, in violation of 18
13  U.S.C. § 1956, and various other drug trafficking counts.  The CD subsequently pleaded
14  guilty and is pending sentencing.  The CD is cooperating for judicial consideration in
15  his/her sentencing.   According to NCIC, the CD has no other criminal history other the
16  current charges.

17      21.     The CD told investigators that WOOLARD was obtaining fentanyl from
18  China and that he was communicating with those sources of supply via email.  The CD
19  also stated that WOOLARD was paying his Chinese sources of supply via Bitcoin and
20  Western Union.  The CD told investigators that WOOLARD was using pill presses to
21  press the fentanyl into counterfeit "M30" pills.  The CD told investigators that
22  WOOLARD had purchased three pill presses, the first two were used by WOOLARD at
23  his residence and the third was used by WOOLARD and PELAYO at another residence
24  on Russian Road in Granite Falls Washington.  The CD stated that after the search
25  warrant at WOOLARD's residence, WOOLARD had the pill press destroyed.  The CD
26  stated that WOOLARD started pressing pills in 2015 and continued until the time that his
27  house was searched.

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 11
USAO #2018R00949

22.    The CD provided information regarding WOOLARD's redistributors including MANTIE and PELAYO.  The CD was shown a Washington driver's license photograph of MANTIE, which the CD positively identified.  The CD stated that MANTIE was WOOLARD's main redistributor of pills.  The CD stated that they were told by WOOLARD that in 2015 MANTIE was initially bringing $25,000 every other week in drug proceeds to WOOLARD and that that amount increased to approximately $50,000 every other week.  The CD stated that the most that they had heard that MANTIE brought WOOLARD was $95,000 at one time.  The CD stated that this was shortly before the search of WOOLARD's residence.

23.    The CD stated that MANTIE lived near the intersection of Sopper Hill Road and 83rd Drive in Lake Stevens Washington.  A Google Maps search shows that the MANTIE Residence is near the intersection of Sopper Hill Road and 83rd Drive as described by the CD.

24.    The CD stated that PELAYO was also distributing pills for WOOLARD and that PELAYO was initially paying WOOLARD $10,000 in drug proceeds.  The CD stated that in mid-2017 PELAYO began pressing pills for WOOLARD and that WOOLARD's pill press was moved to a property on Russian Road.  (Note:  according to records obtained from Snohomish PUD, PELAYO called Snohomish PUD, from phone number 425-404-1227, and indicated that he was the owner of 18222 Russian Road, Arlington Washington and asked for various changes to the utilities at the property.)

**D.    Records Checks for MANTIE**

25.    Investigators searched law enforcement databases and identified that Timothy James MANTIE had a listed address of 2719 84th Drive Northeast, Lake Stevens, Washington (hereinafter, the "MANTIE Residence").

26.    According to records obtained from the Snohomish Public Utility District, the utilities at the MANTIE Residence are in the name Timothy MANTIE with a listed move in date of September 1, 2017.

AFFIDAVIT OF SPECIAL AGENT CHENG - 12
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

27.     According to NCIC, MANTIE's criminal history includes convictions in 2002 of rape of a child -3 and 2009 of a controlled substance violation.  MANTIE began registering as a sex offender in 2002 and was cleared of his duty to register on July 31, 2019.  According to his NCIC sex offender registry information the following phone numbers were listed for MANTIE, 206-708-3123, 425-823-8986, 425-221-7692 and 425-823-9896.  According to his NCIC sex offender registry information, the following residence addresses were listed for MANTIE, 2719 84th Drive Northeast, Lake Stevens, Washington (i.e., the MANTIE Residence) with a beginning date of December 11, 2018; 2719 87 Drive Northeast, Lake Stevens, Washington 98258 with a beginning date of October 18, 2018; 566 East Marine View Drive, Everett, Washington 98201 with a beginning date of February 27, 2017; and 15528 42nd Drive Southeast, Bothell, Washington 98012 with a beginning date of April 29, 2013.

28.     According to the Washington Department of Licensing, Timothy James MANTIE lists 15528 42nd Drive Southeast, Bothell Washington 98012 as his residence address on his driver's license, which was issued in April of 2016.

29.     On October 7, 2019, investigators conducted surveillance at the MANTIE Residence and observed a white Audi, bearing Washington license plate BDP5191, parked in the garage.  According to the Washington Department of Licensing, this vehicle is registered to Timothy MANTIE at 15528 42nd Drive Southeast, Bothell Washington.

**E.     Search of iPhone seized from WOOLARD's residence**

30.     On October 5, 2018, U.S. Magistrate Judge Paula McCandlis signed a search warrant authorizing the search of multiple digital devices seized during this investigation, including the iPhone assigned phone number (360) 395-5222 and Apple ID bradwoolard@ymail.com.  Pursuant to the warrant, investigators searched this iPhone and learned two email accounts were synced with this iPhone, bradwoolard79@gmail.com and bradwoolard@ymail.com.  Review of emails on this

phone revealed email exchanges between WOOLARD and several individuals, who appeared to be based in China, during which they discussed WOOLARD attempting to obtain various chemical substances, including fentanyl and furanyl fentanyl.  It should be noted that multiple documents previously seized from WOOLARD's Residence identified (360) 395-5222 and bradwoolard79@gmail.com as belonging to WOOLARD.

31.     Messages (SMS, MMS and iMessage) contained on this iPhone indicated that WOOLARD was obtaining "blues" and "Ms" from multiple individuals, including an individual believed to be MANTIE; these messages are discussed below.  Based on this investigation to date, investigators believe "blues" and "Ms" to be code for pills marked "M30" or oxycodone 30 milligrams.

32.     In the contact list for this iPhone the following entries are phone numbers suspected to be used by MANTIE: "Ttim" with 425-658-6198 and "Timmynew" with 425-318-9044.  On August 23, 2013, WOOLARD received a text message from 425-658-6198 ("Ttim") which said, "Tim new numb burn da old one."  On September 3, 2013, WOOLARD sent a photo of a check to "Ttim" and "Ttim" replied, "Gotta shitty phone cant zoom in text dat pic to 2o6 7o8 3123."  The iPhone records do not show a message being sent to that number.  As discussed above, MANTIE was convicted of "Rape of a Child-3," and was required to register as a sex offender.  According to the sex offender registry information on NCIC 206-708-3123 is a listed phone number for MANTIE.  As such, investigators believe MANTIE ("Ttim") was the user of the phone with the number 425-658-6198.

33.     On February 2, 2014 at 6:14 am (GMT), WOOLARD sent the following message to MANTIE's 425-658-6198 number, "Can I swing by tomo."  On the same date at 6:23 am (GMT), "Timmynew" from 425-318-9044 replied, "Tim new numb year tmw works."  This message appeared to be in response to the message sent to MANTIE other phone number, as such, investigators believe that MANTIE is the user of 425-658-6198 and 425-318-9044.

AFFIDAVIT OF SPECIAL AGENT CHENG - 14
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

34.     Additionally, investigators believe MANTIE to be the user of two more numbers not saved as contacts in the iPhone, 425-205-5063 and 425-658-6204.  Using 425-205-5063 on April 2, 2013, MANTIE sent "21803 4th ave se bothell wa 98021" and "call when ur fetting off exit" to WOOLARD.  Using 425-658-6204 on July 22, 2013, MANTIE sent "21803 4th ave se bothell wa 98021" and "call when ur close" to WOOLARD.  On November 28, 2013, January 25, 2014, and November 7, 2014, MANTIE from 425-658-6198 sent "218o3 4th ave se bothell wa 98o21" to WOOLARD as the address of a place to meet.  A Google Maps search of this address shows that it a single family residence.  The sending of this address multiple times as a meeting location indicates to investigators that 425-205-5063, 425-658-6204 and 425-658-6198 are likely all used by same individual, MANTIE.

35.     On June 10, 2013, 425-658-6204 sent WOOLARD, "Tim new numb."  As discussed above, investigators believe this number to be used by MANTIE.  The last message WOOLARD received from MANTIE on 425-658-6204 was on August 7, 2013.  As discussed above, on August 23, 2013, MANTIE sent WOOLARD a new phone number, as such, investigators believe that MANTIE is the user of 425-658-6204 also.

36.     Based on my training and experience I know that drug traffickers often utilize multiple telephones and change phone numbers frequently.  This is done to thwart law enforcement's attempts to identify the user of the telephone and conceal the identity of those individuals involved in drug trafficking.  As discussed above, in the time period for which investigators have messages from this iPhone, June 2012 through May 2015, investigators identified five telephone numbers suspected to be used by MANTIE.  A discussed below, most of these phones which have messages with WOOLARD have messages which are consistent with drug trafficking; specifically with WOOLARD supplying MANTIE with marijuana and MANTIE supply WOOLARD with pills.

37.     On April 21, 2013, MANTIE sent WOOLARD, "Hey brotha u still got dat green ?" and WOOLARD replied, "0.75."  MANTIE then said, "K ill take it."  Based on

1    the following conversation, it appears that MANTIE and WOOLARD did meet.  Based

2    on my training and experience I believe that in this conversation MANTIE was asking

3    WOOLARD for marijuana and WOOLARD indicated that he had it.

4          38.     On July 6 and 7, 2013, WOOLARD sent MANTIE, "Were u getting today"

5    and "I wanna buy some."  MANTIE replied, "K ill call u in 15."  Later that day,

6    WOOLARD sent, "I can make it til like 10a do u think that will work I cannot afford a

7    DUI but ill drive down or get a cab if needed" and MANTIE replied, "10 am works."

8    WOOLARD said, "Cool save me a bunch" and MANTIE acknowledged.  WOOLARD

9    then "Can I head down bring u some," "getting on 405" and "I'll take 50 if you got it."

10   MANTIE replied, "K."  Based on the context of their relationship as indicated in their

11   text messages and statements discussed below, I believe that WOOLARD was asking for

12   50 oxycodone pills from MANTIE, which MANTIE agreed to supply.

13         39.     On July 13 and 14, 2013, WOOLARD sent MANTIE, "Do u have?" and

14   "Tomo am ?"  and MANTIE replied "yea" and asked "how many ?"  WOOLARD then

15   said, "20 buy save me some too if u can" and MANTIE acknowledged.  Later that same

16   day, WOOLARD and MANTIE exchanged multiple messages indicating that

17   WOOLARD did indeed go to meet MANTIE.

18         40.     On September 14, 2013, WOOLARD sent to MANTIE, "Do u have ten

19   blues bro."  WOOLARD did not receive a reply.  On October 6, 2013, WOOLARD sent

20   "bring 2g I got a half of purp" and MANTIE replied, "K," "should I bring u 1o ? I got

21   17oo waiting to grab 3 from my buddy then im heading up" and "leaving in 15 c u round

22   615."  WOOLARD replied, "I can't do any til Monday night got to piss for my dr."

23   MANTIE replied, "Ok ill c u in a bit."  WOOLARD then said, "bring the ten" and

24   MANTIE acknowledged.  Investigators suspect that in this conversation, WOOLARD is

25   offering to sell MANTIE a half pound of marijuana and MANTIE is offering

26   WOOLARD 10 pills, suspected to be "M30s" or Oxycodone 30 milligrams.

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 16
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

41.     On February 26, 2014, MANTIE sent WOOLARD, "Back want me to come by ur job?"  WOOLARD replied "I'm at the Woodenville Home Depot I'll hit you up as I'm driving by there's like 100 people there today so maybe down the way" and MANTIE replied, "Ok" and "How many?"  WOOLARD then replied, "15." WOOLARD and MANTIE then exchange messages discussing their locations and ultimately it appears that they meet.

42.     On March 1, 2014, WOOLARD sent MANTIE, "Hey bro my guys going to have two hundred M's on Monday $20 each if you want them," MANTIE replied "yea ill take em for sure."  WOOLARD then sent, "Cool brother so 4000 cash and it's a good deal I think I know for certain that he's going to have them Monday."

43.     On June 18, 2014, WOOLARD sent MANTIE, "Word up bro can you meet at Costco ??" and MANTIE replied, "No im at da apt. Got no ms or vs just a heads up." WOOLARD acknowledged, then MANTIE said, "actually got 6 ms left."  WOOLARD then sent, "Is my cred good for a day or two??"  MANTIE affirmed.  The message then indicated that WOOLARD was driving towards MANTIE.

44.     Based on the messages located in an iPhone found in WOOLARD's residence, investigators believe that WOOLARD and MANTIE have had a drug trafficking relationship starting in mid-2013, with WOOLARD obtaining "M30s" or oxycodone pills from MANTIE.  As discussed below, investigators believe that their roles reversed when WOOLARD began obtaining fentanyl from China and pressing counterfeit "M30" pills himself and supplying them to MANTIE.

**F.     Search of iPad seized from WOOLARD's residence**

45.     As noted above, investigators previously seized an iPad from WOOLARD's residence.  The search warrant signed by US Magistrate Judge Paula L. McCandlis on October 5, 2018, also authorized the search of this device.  The "Owner Name" is listed as "Brad's iPad" and the associated Apple ID is bradwoolard@ymail.com.  As discussed above, this is WOOLARD's known Apple ID.

AFFIDAVIT OF SPECIAL AGENT CHENG - 17
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Investigators located numerous photos stored in this device which depict WOOLARD
2   and BRUNS.

3        46.    Investigators reviewed iMessages between bradwoolard@ymail.com and 1-
4   425-404-1227, which is saved under the contact name "Tonny."  Investigators believe
5   this phone to be used by Anthony PELAYO.[1]  On January 29, 2017 WOOLARD and
6   PELAYO exchanged the following messages:

7

8        WOOLARD: "U should run enuf to get by til I'm back before u move it. Might
9        need my adjustments after the ride."

10       PELAYO: "Ya that is my plan I'm gonna run that whole bucket at least then c
11       where I'm at."

12       PELAYO: "Tim never hit me up dude said he will swap that 30 tomo"

13       WOOLARD: "Might be a day or two. U know how it goes"

14       WOOLARD: "But thank you."

15       WOOLARD: "This will be a good thing for us. Safe to only I know where and I'm
16       as solid as a rock."

17       WOOLARD: "I just made a offer on a beach house. Our family's can have fun this
18       summer and for a long time."

19       PELAYO: "O ya I'm gonna save every penny to ya this is gonna b hella good I'm
20       gonna b working this week on cleaning some shit out and all that good stuff"

21       WOOLARD: "Good deal.  Please toss the old presses out for me"

22       WOOLARD: "Keith will help. I'll send his #"

23       PELAYO: "Ok would you mind if I take them apart so I could just put them in
24       different bags"

25

26  _____
    [1] As discussed above, PELAYO utilized this telephone number to contact Snohomish PUD.  Investigators also
27  executed a search warrant at PELAYO's residence, 3423 68th Drive NE, Marysville, Washington, on May 30, 2019.
    During the search, investigators seized, among other things, cash, firearms, and documents, some of which referred
28  to Anthony PELAYO's phone number as 425-404-1227.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

WOOLARD: "Not at all use my tools whatever u need"

PELAYO: "Ok cool that will be lighter when I toss it."

47.    Based on the ongoing conversation, the ongoing investigation, and my training and experience I believe, in this conversation, that PELAYO and WOOLARD are discussing PELAYO pressing a large quantity of pills before WOOLARD left town and that WOOLARD asked PELAYO to dispose of some old pill presses for WOOLARD.

48.    On January 31, 2017, WOOLARD sent, "I have huge respect for you bro. U do good for your family.  Work out stay healthy. I look up to u in a way.  I will be more like you.  I'm having a pretty rought time but it's good.  I'm so mad at drugs.  I'll never touch one again.  Never give me any. Ever. Plase no matter what I say or do." PELAYO replied "Ya I got u bro the first week is gonna b rough u can get threw it and leaving for a month after is the smartest thing u can do that will help out a lot and once u get there won't be nothing around and u just gotta focus on stacking money plus this time ur not gonna be hurting for cash U can keep urself busy and not b worried about bills being paid u kno."  During the course of the investigation, agents learned that WOOLARD personally used illegal drugs.  Based on these messages and the messages discussed below, investigators believe that WOOLARD is referring to not personally using drugs any longer, and not stopping his distribution activities.

49.    The following exchange between WOOLARD and PELAYO, using 425-404-1227, occurred on February 7, 2017:

WOOLARD: "Tim said the things were bad.  I'll call him in a he to see how."

WOOLARD: "A hr"

WOOLARD: "U will have to make adjustments"

PELAYO: "Ok just let me kno cuz those r the ones me and u made"

WOOLARD: "Really?? They should be fine"

PELAYO: "Ya, I haven't gave him any yet the last ones he got were from u"

AFFIDAVIT OF SPECIAL AGENT CHENG - 19
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   WOOLARD: "I guess the strength is down a bit and not quite hard enuf. Both will

2   be fixed by increasing the weight. Please weigh them and if you can break them

3   with your fingers they are to soft. Moving the machine did this I'm sure."

4   PELAYO: "I was about to over there to work what should I do"

5   PELAYO: "Ya I was weighing the ones I made made sure they're were 128 right"

6   WOOLARD: "We might have to add a lil active to it. We will have to grind and

7   repress when I get back but for now we just fix and make more. They should

8   weigh I'll know more later just hang tight for now."

9   WOOLARD: "Pull the dry pads out that might be affecting it"

10   WOOLARD: "Fuck"

11   PELAYO: "Ok"

12   PELAYO: "I moved almost 2k so far and no one has called me I wonder why they

13   calling him that's weird"

14   WOOLARD: "I'll do some math and u can add like .02 mg to each on before next

15   press.  They have bigger tolerances."

16   WOOLARD: "He has fiends"

17   WOOLARD: "I'll hit u back later"

18   PELAYO: "Ok should I go take those pads out real quick"

19   PELAYO: "Or just wait for ur call"

20   WOOLARD: "I'm doing some math. Give me a min"

21   WOOLARD: "Ok weigh out 1560g of mix. Add 2.5g of active that has been

22   ground. Mix super good. That will make close to 12000 for his next batch. Make

23   them. 130 ea but same size. Should fix it."

24        50.    In the messages described above, investigators believe that PELAYO told

25   WOOLARD that their customer "Tim" complained about the potency of the pills.

26   Investigators suspect "Tim" to be MANTIE.  Investigators believe that the term "active,"

27   as used by WOOLARD, is a reference to the active ingredient in the pills, believed to be

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fentanyl or a fentanyl analogue.  Investigators believe that WOOLARD and PELAYO
discussed how to increase the potency of the pills that PELAYO was pressing on
WOOLARD's behalf in response's to MANTIE's complaint about potency.  The
message exchange concluded with WOOLARD providing PELAYO with an updated
"recipe" for the pills.  Additionally, when PELAYO said, "I moved almost 2k so far and
no one has called me," investigators believe that PELAYO told WOOLARD that
PELAYO has distributed 2,000 pills himself and they did not complain about the quality.

51.     On February 8, 2017, PELAYO sent the photograph below to WOOLARD
followed by a message that said "call me."



52.     Investigators conducted an internet search for pill presses with a similar
appearance.  Investigators identified a RTP9 Rotary Tablet Press, sold by LFA Tablet
Press that appeared consistent in appearance to the above photograph.  According to the

AFFIDAVIT OF SPECIAL AGENT CHENG - 21
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   LFA website, this pill press weighs 260 kg or 485 pounds.  Investigators have obtained
2   court authorization for search warrants on approximately 10 separate locations through
3   the course of this investigation and have been unable to locate the pill press depicted in
4   the above photograph or any other pill presses.  Based on the messages between
5   PELAYO and WOOLARD, investigators believe that PELAYO had access to and knew
6   the location of the pill press utilized by WOOLARD and PELAYO to press fentanyl
7   laced pills.

8        53.    On March 27, 2017, WOOLARD sent to PELAYO, "R u up? I'm going to
9   my cabin and was going to drop that 5000 on way."  PELAYO replied, "I gotta get em
10  finished I thought U where gonna give me a day notice I will have it ready for u in a few
11  hrs tho" and "I'm only short a few k."  On March 30, 2017, PELAYO sent "Hey I guess
12  Noi client canceled do u wanna go back out there tomo and mess with the machine" and
13  WOOLARD replied "yes."  PELAYO then sent, "Koo I'll come by after the gym again"
14  and WOOLARD replied "k" and "I got that pkg to."

15       54.    Investigators also reviewed iMessages between bradwoolard@ymail.com
16  and "Shawna Marie," using phone number 425-501-9209.  Based on the investigation to
17  date, investigators believe 425-501-9209 was used by Shawna Marie BRUNS,
18  WOOLARD's wife.

19       55.    During the approximately time frame of the messages discussed above, on
20  February 2, 2017, BRUNS sent WOOLARD, "Do we still have money coming in" and "I
21  haven't see any so I worry."  WOOLARD replied, "Ya it been stashed in shop. Wall safe
22  is full lol."  BRUNS acknowledged then WOOLARD said, "50k a week from Tim" and
23  "40-50."  Based on the information in the message described in this affidavit and the
24  interview described below, investigators believe "Tim" to be MANTIE and that
25  WOOLARD told BRUNS that MANTIE was bringing $40,000 to $50,000 a week to
26  WOOLARD.

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 22
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**G.      Search of Apple iCloud, Google, and Hotmail Accounts**

56.      In early 2019, investigators obtained court authorization to search Apple iCloud accounts belonging to WOOLARD, Anthony PELAYO and others.  Additionally, search warrants were obtained for an email address being used by a suspected Chinese fentanyl source of supply.  The data obtained via those search warrants indicated that WOOLARD was ordering fentanyl from a source of supply in China and having it shipped to multiple individuals in Western Washington.  Below is a sample of messages between WOOLARD and phones believed to be used by MANTIE that illustrates their drug trafficking relationship.

57.      In an iCloud account with the Apple ID: bradwoolard@ymail.com, which investigators believe belonged to WOOLARD, investigators identified messages between WOOLARD and "Tttim" using phone number 206-858-0820, which investigators suspect is used by MANTIE.  On August 29, 2017, MANTIE wrote WOOLARD, "U back ? Can I grab fee reals from ya ?" and WOOLARD replied, "I'm back. Ya but they the bigger blue ones."  The messages continue and indicated that MANTIE went to meet WOOLARD.  Based on my training and experience and knowledge of this case, I believe "reals" to be code for real "M30s" not the counterfeit pills being pressed by WOOLARD.

58.      On October 9, 2017, WOOLARD sent MANTIE, "Any ? I got a chance to swap a bunch today.  If not no big deal just thought I ask."  MANTIE replied, "He'll yea I could use some."  WOOLARD then sent, "No I think you misunderstood I can swap bills."  MANTIE replied, "Lol oh thought u were talking bout reals … yea tonight I got something co.ing in"  Based on my training and experience and knowledge of this investigation, I believe that MANTIE miss understood WOOLARD to mean that WOOLARD want to exchange counterfeit "M30s" for real "M30s" when WOOLARD wanted to exchange small bills for large bills with MANTIE.

59.      On October 12, 2017, MANTIE sent to WOOLARD, "2719 84ᵗʰ Dr ne lake Stevens wa 98258 … come anytime after 930 pm call when on way thanks."  This

1  messages appears to be MANTIE inviting WOOLARD to meet with MANTIE at the
2  MANTIE Residence.

3      60.    On June 23 and 24, 2018, WOOLARD exchanges multiple messages with
4  218-576-4162, saved in WOOLARD's phone as "Tnewt" which discuss travelling to Las
5  Vegas.  In that conversation WOOLARD asked for "Tnewt's" information and "Tnewt"
6  sent "Timothy j mantie … 3/3/82."  Based on this message, investigators believe
7  MANTIE to be "Tnewt."

8      61.    On May 15, 2018, WOOLARD sent to MANTIE "Cool. Can u get reals?
9  I'd take as many as I can. My guy gets in 2 weeks."  MANTIE responded, "I got some I
10 can give u tonight and then yea hopefully tmw I'm supposed to get a few Hun."
11 WOOLARD then sent, "I got some but need to restock."

12     62.    In an iCloud account with the Apple ID: anthonypelayo@comcast.net,
13 which investigators believe belonged to PELAYO, investigators found a contact saved as
14 "T" with the phone number 206-858-0820, which is the same phone number that was
15 saved in WOOLARD's iCloud account as "Tttim," and which exchanged some of the
16 messages with WOOLARD described above.  Also saved in PELAYO's iCloud account
17 under the name "T" is 425-375-8203.  This same phone number is save in WOOLARD's
18 iCloud account as "Tttttiiiimmm."

19     63.    In summary, based on the text messages obtained from devices seized from
20 WOOLARD's residence and searched pursuant to federal search warrants, investigators
21 identified messages between WOOLARD and phones believed to be used by MANTIE,
22 which indicated that WOOLARD and MANTIE have been involved in drug trafficking
23 together since approximately 2013 and that drug trafficking relationship continued until
24 mid-2018.  Based on WOOLARD's own messages and the statements of the CD,
25 MANTIE was bring approximately $40,000 - $50,000, in suspected drug proceeds, every
26 week or two weeks to WOOLARD.

27
28
AFFIDAVIT OF SPECIAL AGENT CHENG - 24
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**H.    Execution of Search Warrant at MANTIE's Residence and Search of Cell Phones**

64.    On October 9, 2019, US Magistrate Judge Paula L. McCandlis signed a search warrant authorizing the search of the MANTIE Residence, located at 2719 84th Drive Northeast, Arlington, Washington.  On October 10, 2019, the aforementioned search warrant was executed.  As investigators were knocking and announcing, MANTIE opened the door and was detained.  Also present at the residence at that time was a female (MANTIE's girlfriend, A.W.) and a young child.

65.    Investigators conducted a pat down of MANTIE for weapons.  During the pat down, investigators located approximately $5,119 in U.S. currency, which included $5,000 in MANTIE's pocket that was folded and wrapped with a rubber band.

66.    During a search of the residence, investigators seized approximately 18 cell phones, approximately $15,900 in U.S. currency, multiple digital scales with suspected drug residue, and a small quantity of suspected controlled substances.  Additionally, investigators located throughout the residence several pieces of jewelry, among which were items appearing to be Rolex watches and a diamond necklace.  One of the Rolex watches was seized from a backpack that also contained a substance that field-tested positive for cocaine.  The preliminary estimate obtained by DEA of the value of the jewelry seized from MANTIE's residence is approximately $79,979.  Photos of some of the jewelry and currency found with MANTIE's residence are set forth below.

1
2
3
4
5
6
7
8
9
10

 

11
12
13
14
15
16
17
18
19

      67.    During a search of MANTIE's wallet, investigators located a paper sheet with unit number 2357 and gate code on it.  Investigators recognized the paper as being for a storage unit.  As a result of an internet search, investigators identified the storage company as Everett Downtown Storage.  Investigators obtained records, via administrative subpoena, from Everett Downtown Storage that show that unit 2357 at the Everett Downtown Storage – McDougall, 3615 McDougall Avenue, Everett Washington (hereinafter, "MANTIE's Storage Unit") is rented by Timothy MANTIE and has been rented by MANTIE since April 2017.  Additionally, the records indicated that the unit was paid through January 14, 2020.

20
21
22
23
24
25
26
27
28

      68.    On October 10, 2019, the Honorable Paula L. McCandlis signed a warrant authorizing the search of MANTIE's Storage Unit.  Investigators executed the warrant that same day.  Two employees of the storage locker facility cut the lock off of MANTIE's Storage Unit and then left the area.  While executing the search warrant, investigators located a purple suitcase tagged with the name of MANTIE's girlfriend, A.W.  The suitcase contained packaging for Suboxone strips and approximately 31 items of jewelry.  The preliminary estimate obtained by DEA for the value of the jewelry seized

Affidavit of Special Agent Cheng - 26
USAO #2018R00949

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

from within MANTIE's Storage Unit is approximately $396,677.[2]  Photos showing some of the jewelry found inside the storage unit are set forth below.

 

69.     MANTIE and his girlfriend were released at the conclusion of the search warrant at his residence.

70.     Pursuant to the search warrant of his residence, investigators searched the cell phones seized from his residence.  Of the approximately 17 cell phones seized from the MANTIE residence, one cell phone was assigned the phone number 206-708-3123, which as discussed above, was listed on the sex offender registry for MANTIE and another cell phone was assigned phone number 218-576-4162, which was stored in WOOLARD's contact listed as "Tnewt," as discussed above.  Additionally, three additional phones were assigned numbers 425-375-8203, 425-215-6751 and 425-553-8713 were also saved in WOOLARD's contact list.

71.     Investigators determined that one of the phones seized from MANTIE's residence was assigned phone number 425-309-5362.  According to messages found in

_____

[2] Investigators have obtained records from the Washington State Employment Security Department related to MANTIE's employment and wage history.  According to those records, between July 1, 2017 and September 30, 2019, there is no record of reported employment or wages for MANTIE.  Similarly, on or about October 10, 2019, MANTIE's girlfriend, A.W., told investigators that she is unemployed.  According to information obtained in January 2020 from the Internal Revenue Service, MANTIE did not file a federal income tax return in 2015, 2016, 2017, or 2018.

this phone, service started for this phone on or about September 22, 2019; the texts stored in the phone continued into October of 2019.  Much as he texted WOOLARD and PELAYO when he changed his phone number, MANTIE texted "T new" to various contacts stored in his phone.  MANTIE thereafter engaged in text messages that appear drug-related with those contacts.

72.     For example, on September 22, 2019, MANTIE texted one of his stored contacts, "Fasho .....can I have my boy grab whatever u said I had for me round 9 pm? He will be that way," and "U guys accepting visitors tmw me and andria prob roll by tmw if so and I'll update u on that slide in person."

73.     On September 23, 2019, one of MANTIE's contacts texted, "I need to put about 10 percent of the old stuff in it", "just have him call me so he knows exactly what to do," and "I can get extra reals also."  (Based on training and experience, the term "reals" can refer to M30 pills that contain oxycodone, as opposed to imitation M30s that contain fentanyl.)  MANTIE responded, "OK I'll take some of those tmw prob 100."

74.     On October 1, 2019, MANTIE texted one of his stored contacts, "No this is the burn," and "The other 1 is fam line." (Based on my training and experience, I know drug traffickers have multiple cell phones, and will sometimes have a "burner" or prepaid cell phone primarily used for drug distribution, and a separate phone generally used for communicating with family members.)

75.     On October 5, 2019, MANTIE texted one of his stored contacts, "Trav said those slide to extreme we need them to slide normal cus peeps dont get there normal dosage when it go so q quick.......im think I'm gonna get formula from essays if I do them a favor so ima check it out and I'll call u."  The text in response was, "I can dial it back a little shouldn't be problem," and "I'll just cut the new in half."  On October 6, 2019, MANTIE received a text from one of his stored contacts ("Trav"), stating, "These aren't really even moving, they're burning but just sitting in the same spot, the last ones moved better."  MANTIE responded, "Holdem exchange later."  (Based on training and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  experience, it appears that MANTIE was discussing the strength of narcotics in these

2  texts.)

3  **I.    Arrest of MANTIE**

4        76.    As discussed above, on October 22, 2019, the federal grand jury returned

5  the Second Superseding Indictment in *United States v. Woolard, et al.,* in which

6  MANTIE was charged with *Conspiracy to Distribute Controlled Substances*, in violation

7  of 21 U.S.C. §§ 841(a)(1) and 846, and an arrest warrant was issued for MANTIE.  On

8  the same date, MANTIE was arrested pursuant to the warrant at his residence.[3]  Seized

9  from MANTIE's person at the time of his arrest was a black cell phone (**Target Device**).

10  The **Target Device** was subsequently processed into DEA evidence as exhibit N-1035

11  and is currently stored in non-drug evidence at the DEA Bellingham Resident Office.

12        77.    Based on the facts described above detailing MANTIE's involvement in

13  this drug trafficking conspiracy, investigators believe that there will be evidence of

14  MANTIE's drug trafficking activities on the **Target Device**.

15  **I.    Search Warrant Authorized for Target Device**

16        78.    On April 28, 2020, U.S. Magistrate Judge Paula L. McCandlis authorized a

17  search warrant for the **Target Device**.  Due to the limited investigative resources, due in

18  part to some investigators working remotely and other ongoing investigation being

19  conducted by the DEA Bellingham Resident Office, to include undercover operations,

20  investigators did not search the **Target Device** during the authorized window of time.

21        **V.    KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**

22        79.    Based on my training and experience, and my discussions with other

23  experienced officers and agents involved in drug investigations, I know that drug dealers

24  use cellular telephones as a tool or instrumentality in committing their criminal activity.

25  They use them to maintain contact with their suppliers, distributors, and customers.  They

26

27  _____

28  [3] On October 23, 2019, MANTIE made his initial appearance.  MANTIE was subsequently released under pre-trial supervision.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

a.      The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

b.      The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors, and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is

1   helpful (and thus is evidence) because it leads to friends and associates of the user who

2   can identify the user, help locate the user, and provide information about the user.

3   Identifying a defendant's law-abiding friends is often just as useful as identifying his

4   drug-trafficking associates.

5          c.     Stored text messages, to include alternative communication apps

6   (such as WhatsApp, Signal, Wickr, etc) are important evidence, similar to stored

7   numbers. Agents can identify both drug associates, and friends of the user who likely

8   have helpful information about the user, his location, and his activities.

9          d.     Photographs (and videos) on a cellular telephone are evidence

10   because they help identify the user, either through his or her own picture, or through

11   pictures of friends, family, and associates that can identify the user. Pictures also identify

12   associates likely to be members of the drug trafficking organization. Some drug dealers

13   photograph groups of associates, sometimes posing with weapons and showing

14   identifiable gang signs.  Photographs can also be useful for disposition of drug proceeds

15   and identifying assets purchased with drug proceeds.

16          e.     Stored address records are important evidence because they show the

17   user's close associates and family members, and they contain names and nicknames

18   connected to phone numbers that can be used to identify suspects.

19          f.     It is common for drug traffickers and money launders to use

20   encrypted means of communication, such as WhatsApp, Signal, Wickr, and Telegram, to

21   attempt to avoid detection by law enforcement.  It is common for drug traffickers to

22   install and use these apps on their phones in order to make encrypted calls and send

23   encrypted messages.

24   ## VI.   CONCLUSION

25        80.    Based on the information set forth herein, there is probable cause to search

26   the above described **Target Device,** as further described in Attachment A, for evidence,

27   fruits and instrumentalities, as further described in Attachment B, of crimes committed by

28

Affidavit of Special Agent Cheng - 31
USAO #2018R00949

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1  MANTIE and his coconspirators, specifically *Distribution of, and Possession with Intent*
2  *to Distribute, Controlled Substances*, in violation of Title 21, United States Code, Section
3  841(a)(1); and *Conspiracy to Distribute Controlled Substances*, in violation of Title 21,
4  United States Code, Sections 841(a)(1) and 846.

5        81.    Because this warrant seeks only permission to examine the **Target Device**,
6  which is already in law enforcement's possession, the execution of this warrant does not
7  involve the physical intrusion onto a premises. Consequently, I submit there is reasonable
8  cause for the Court to authorize execution of the warrant at any time in the day or night.

9
10
11                          Joseph Cheng
12                          Special Agent
13                          Drug Enforcement Administration
14
15        The above-named agent provided a sworn statement attesting to the truth of the
16  contents of the foregoing affidavit on 11th day of June, 2020.

17
18                          Hon. Paula L. McCandlis
19                          United States Magistrate Judge
20
21
22
23
24
25
26
27
28
AFFIDAVIT OF SPECIAL AGENT CHENG - 32
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A

### (The Target Device to be Searched)

The **Target Device** to be searched is further described as follows:

The **Target Device** is a Black Axia Cell Phone, which was seized from the person of Timothy MANTIE on October 22, 2020.  The **Target Device** was assigned DEA exhibit number N-1035 and is securely stored as evidence at the DEA Bellingham Residence Office, 1855 Barkley Boulevard, Bellingham, Washington 98226.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B

## (Items to be Searched for and Seized)

This warrant authorizes the search for the following items in the **Target Device**, as further described in Attachment A:

Evidence, fruits, and/or instrumentalities of the commission of the following crimes: *Distribution of, and Possession with Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. § 841(a)(1), and *Conspiracy to Distribute, and to Possess with the Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1) and 846, specifically:

      a.      Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

      b.      Stored list of recent received, sent, or missed calls;

      c.      Stored contact information;

      d.      Stored photographs and videos of narcotics, currency, financial records, firearms or other weapons, evidence of the aforementioned crimes of investigation, and/or that may show the user of the **Target Device** and/or coconspirators, including any embedded GPS data associated therewith; and

      e.      Stored text messages that are evidence of the above-listed federal crimes or that may identify the user of the **Target Device** and/or coconspirators, including messages sent via messaging apps, including Wickr, Signal, WhatsApp, and Telegram, or other similar messaging services where the data is stored on the telephone.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970